We'll hear argument now in the case of the United States v. Bradley. Mr. Drysdale. Good morning again, Your Honors. May it please the Court. I'm here this time on behalf of my client, Jasmine Bradley. This appeal is particularly about delays under the Insanity Defense Reform Act that, unfortunately, have become very common. Specifically, this is about a delay under 18 United States Code 4241-D-1. Mr. Drysdale, your argument is solely based on a violation of the statute, not on the Due Process Clause, correct? That's correct, Your Honor, yes. And do you agree that the standard of review for that is abuse of discretion? I do, Your Honor, yes. Thank you. And so, really, what we're looking at here, Your Honors, is that D-1, which I'll abbreviate to, allows for no more than four months for a competency evaluation to determine whether a defendant can be restored to competency. But before I get into the ultimate issue here, I think, based on the government's red brief, we need to address a couple things, and that is whether a violation occurred and when that violation began, if it did occur. So the district court did find that a violation of D-1 had occurred. The district court used March 7, 2022, the date Ms. Bradley was hospitalized, to August 24, 2022, the date she was released, which is five months and 15 days. And the government has now asserted on appeal that that is not a violation of the statute because the government, in the government's view, under 4241 D-2B, they can continue to hold a defendant beyond four months without any finding under D-2A that restorability is possible. That's simply never been accepted by any court because it renders D-1 and D-2A both superfluous. Has any court found otherwise? Carter, Your Honor, the district court in D.C. Has any appellate court ever found otherwise? No, Your Honor. How do you get around the or in the statute? So let me be specific which or I'm talking about. D-2A, between A and B, there's an or. There's an or. So you are arguing that you have to make a finding under A before you can get to B, but or doesn't suggest that. Or operates, Your Honor, in our view. D-2B operates in assumption that D-2A has been compliant. What are you basing that argument on given the or? Right, just the statutory. If it said and, that might be.  Simply the statutory language, Your Honor, in the sense of I don't understand how Congress could put four months in D-1 and then simply say the government can hold someone for the end of the case under D-2B without any finding under D-2A. Because then why do we need the finding under D-2A at all? We wouldn't. The court would never have to make that finding. And so it cannot be read like that lest it render it superfluous. And again, we have multiple appellate courts saying not necessarily that that's not the reading. It really hasn't been addressed. But we do have several appellate courts that have said that the four-month period under D-1 cannot be extended or surpassed for any reason. And we do have courts, appellate courts, we cited cases from the 11th. I don't know how you could say that D-1 can't be surpassed when D-2 says for an additional reasonable period of time. Right. That suggests D-1 can be surpassed for an additional reasonable period of time. If there is a finding that there is a substantial probability that the defendant may regain competence within that additional reasonable period of time. And the district court cannot make that finding until the evaluation under D-1 is done. Because it wouldn't necessarily have the evidence to do it. And so that's how the pieces of the statute work together and fit together to do that. And that's why you have particularly… Counselor, the statute uses the term reasonable period of time. Under D-2A. Yes, Your Honor. And there is some evidence in the record, and I'd like to clarify this. In the minute entry, Judge Holly says for four months. You've got four months. Right. Doesn't track the statutory language. Okay. Don't district judges, magistrate judges have the ability to issue orders that says I've looked at this. This is a reasonable amount of time. There's an end date. Not under D-1, Your Honor. D-1 very clearly says for an additional period of time not to exceed four months. Right. And the magistrate judge, the district judge could take all of that into account. Yes. And could say here's how long they're going to be incarcerated for the treatment, for the report, for everything. For the examination, I'm sorry, for the report, for everything. I'm setting the competency hearing or after the competency hearing. I'm setting a time period to determine whether or not they can be later found competent. Here's my hearing dates. BOP, you've got to live with them. If you don't think that's appropriate, you can come back. You can appeal me. You can say that you need more time. But I'm controlling it by setting these dates. Couldn't the magistrate judge or district judge do that? I don't believe so, Your Honor. I believe that if we are going to track the statutory language, and I think this tracks particularly what the Sixth Circuit said in Baker. If we're going to track the statutory language, it is four months and no more for the initial competency evaluation. Then, if the district court and only if the district court can make a finding that there is a substantial probability of restoration, can the defendant be held for another additional reasonable period of time? Counsel, I don't see where this gets you. I'm a big fan of enforcing statutory language. And so I ask, where in the statute does it say that if the examination lasts longer than four months, the indictment must be dismissed? It doesn't, Your Honor. It doesn't. Is there any other statutory language you rely on? You're urging us to apply the statute strictly as written. I get that. But the statute doesn't specify as a remedy anything. I agree, Your Honor. It does not. And so I think the position that we are taking, and I think the government recognizes as well, as many courts have found, that dismissal without prejudice is an appropriate remedy for this statute. Is a possible remedy. Is a possible remedy. You're asking for mandatory dismissal with prejudice. I don't necessarily think we're asking for mandatory dismissal with prejudice, Your Honor. You don't like the way the district court has exercised discretion. You're asking us to reverse. That sounds mandatory. Your Honor, I believe our position would be that this is the factors would weigh in favor of dismissal with prejudice here. I understand that it is an abusive discretion standard. But what factors? There aren't any statutory factors because there's no statutory reference to a remedy. Correct, Your Honor. So I would look to what the – So what do you think about cases in which the Supreme Court has said, when the government blows by a deadline, it can still proceed? There are a lot of them, including one by the Supreme Court just last June. And they all say when the government misses a deadline, including when a federal judge misses a deadline, that does not abort the litigation. I understand, Your Honor. And so I think our position comes back to what we wrote in our briefs in the sense of the repeated violations. I'm asking you about concrete decisions of the Supreme Court. The one I just mentioned is McIntosh, which said that the litigation ends or relief is blocked if and only if the statute says that. Right? And you're arguing that this litigation must end, the indictment must be dismissed, even though the statute doesn't say that. I'm asking how can that be reconciled with our marching orders from the Supreme Court? Your Honor, I don't know that I have a good answer to that question. I simply would say that when we look at all of the cases that talk about dismissal without prejudice, and we would believe that in a situation where we can show this repeated practice and pattern of violations, that it would be an appropriate remedy for the district court to issue. How is that an abuse of discretion for the court in a criminal case to say, I'm not going to look at all of these other cases that may exist out there. I'm focusing on Ms. Bradley and the case before me. And under the circumstances here, dismissal with prejudice is not appropriate. How is that an abuse of discretion? Your Honor, I think eventually it becomes a problem when the answer from the government continues to be the same and the violation continues to be the same and the reasons for violating the statute continue to be the same. That sounds exactly like the argument the Supreme Court rejected in McIntosh. That was what Mr. McIntosh was arguing about forfeiture. I do understand that, Your Honor. And so I think that, you know, I understand that it is difficult to beat the abuse of discretion standard. And it's a criminal case. It's all about the individual defendant before the court, not about other circumstances. Maybe there are other laws you could use if this is a broad, repeated practice, as you've indicated. But in an individual criminal case, again, how could it be an abuse of discretion not to rely on what happened in any other criminal case? And I think my response to that would simply be, Your Honor, that that's not the only thing we relied on. We also relied on the fact that she was on bail and the prejudice that that led to her as well because she was free before this. If there's nothing else. Thank you, Mr. Dreister. Thank you, Your Honor. Mr. Kinstra again. There's a certain repetition here. May it please the Court. Jeff Kinstra on behalf of the United States. The defendant's restoration complied with the statute. And even if it hadn't, dismissal without prejudice is neither authorized under the statute nor would it be an appropriate remedy in this case. And the district court certainly didn't abuse its discretion in so holding. Now, I can begin with the question of compliance with the statutory deadlines. The defendant's argument this morning is focused on really the D-2 argument. But the four-month period under D-1 concluded on time. It concluded by July 5. And then after that, the authority for the defendant's continued hospitalization was under D-2. Counsel, if the magistrate judge had said we're having a hearing in three and a half months and I want everyone ready for the hearing and this needs to be done in three and a half months, could the magistrate judge or district judge impose sanctions for failure to abide by that order? If the court has entered an order, I think that is a separate issue where the court has the authority to enforce its orders. It has an inherent authority in that circumstance. The only violation the defendant is alleging in this case is purely statutory. I'm asking a hypothetical. It's not this case. Would the government concede that that order could be enforced through sanctions? An order certainly can be enforced by sanctions. I think the government, in a case that presented the question, might have some further thoughts on the extent of a court's authority to do that. But certainly courts do have roles. As Your Honor mentioned, the statute says reasonable periods of time. The government's position isn't that the courts have no role at all in that. There are findings that the court needs to make, both as a due process matter and as a statutory matter. So courts certainly do have roles to play. But under the statutory argument here, the defendant's argument is essentially that a restorability finding is a prerequisite to any continued hospitalization under D-2, and that's just not the best reading of the statute. The reference to the restorability finding is embedded in one of the two limiting conditions under D-2. D-2 says that even after the initial four-month period, the defendant's hospitalization by the Attorney General must continue for an additional reasonable period of time that ends on the earlier of two different occasions, either restoration itself, restoration of competency, or the dismissal of the charges. And the statutory reference to the restorability finding is really a condition to one of those two limiting events. If the court hasn't found that the defendant can be restored, certainly the defendant then will not have been restored, and so the condition in capital A will not have occurred. And as long then as the period of hospitalization remains reasonable and the charges haven't been dismissed, then there is statutory authority for the Attorney General to continue to hospitalize the defendant for treatment under D-2. I'd note that the alternative under the defendant's argument would mean that after the initial four-month period, while the district courts are awaiting the report and making findings and perhaps allowing the defendant additional time to prepare contrary evidence of their own, that during that interim period, defendants who by definition at that point are incompetent would have to be removed from hospitalization, even though their commitment under the statute would have to continue. Because the statute makes clear in D-1, I'm sorry, in 4241D, that an incompetency finding triggers an automatic commitment order, and then in subsection E, the end date of that commitment is a finding that there has been restoration, that the defendant is now competent. So the defendant is essentially carving out a middle area where even while still committed and incompetent, a defendant would have to be removed from hospitalization, and that's not a likely outcome either. So the government's position is that the restoration complied with the statute here. Perhaps the more direct... But is it D-2B that brings you into compliance here? I think so. I think the more precise way, the way I would say, is that D-2 itself is what brings us to compliance. D-2 says for an additional reasonable period of time, and then it specifies two endpoints or two limiting events, one of which is restoration, the other of which is dismissal. And so under D-2, the additional reasonable period of time authorized the hospitalization here, and because neither of the endpoints in A and B occurred, the hospitalization remained justified under 4241D-2. Does it matter that 2A is irrelevant here? I think what matters is that 2A didn't... The limiting event never occurred. The defendant was not hospitalized past the point at which the court found that the defendant's competency had been restored. And so the language, the reference to restorability in D-2A is essentially sort of a traffic cop function in the statute. It recognizes that there are two alternative endpoints for the restoration process. One is the defendant is found restored, and in that instance, then D-2A is what will limit the hospitalization. The other possibility, which is addressed in the last sentence of 4241D, is that the defendant's competency will not be restored. And at that point, the statute basically directs the court to different provisions, 4246. It seems odd that 2 would kick in when, as you say, there are two points for restoration. But at the end of the four-month period, we know she's restored to the extent... She's competent, so you don't even have to talk about being restored. So it seems odd that if at the end of that four-month period she has the capacity to go to trial, that the trigger for release is based on something triggering restoration. So if at the end of the four-month period she actually is competent to proceed to trial, then the limiting event in 2A will have occurred at that point, and the hospitalization would conclude, and under 4241E, the defendant's commitment would conclude as well. But I think that's the argument, that if just A applies, she doesn't meet the four months because she's still in the hospital longer than four months. I'm not sure I'm following. So she's hospitalized for five months. That's correct. And as I understand Ms. Bradley's argument, five months exceeds four months under 1. And that's the only provision that applies here. And so our disagreement is on that very last sentence. So the first four months were authorized under D1. The additional time was authorized under D2. And that time did not end before the defendant was released because neither of the two limiting events in D2 occurred. And my comment to you is how do you respond that this additional reasonable time deals with efforts to restore the defendant? She doesn't need restored here. It just doesn't seem like a fit. In this particular case? Correct, correct. Right, and so that's kind of a separate issue. As the Second Circuit recognized in Magus Alba, additional things do have to occur after the affirmative evaluation period. The four months is evaluative. After that, the Bureau of Prisons will need to prepare a report. The defendant may need time to respond. The court will have to make findings. And so the parties here agreed once the defendant raised the issue to the court and the government relayed at least the Bureau of Prisons informal position that the defendant's restoration had been completed, that at that point the defendant could be released and sent home. And she was very promptly with the government's assistance. But she was never hospitalized past the dates authorized in D2. As to the remedy, I think Your Honors understand the government's position. The Insanity Defense Reform Act simply does not provide the sort of remedy that the defendant is asking for here. Judge Easterbrook, as you referenced, in many cases the Supreme Court has recognized that the law imposes some sort of mandatory duty with the deadline. And it's equally stated that there is no presumption that for every one of those duties there must exist some sort of corollary punitive sanction. The remedy in those circumstances is prompt compliance. It's not dismissal. That's exactly the case here. That's consistent with the Supreme Court's decision in Jackson as well, which addressed a similar delay, albeit under the Due Process Clause. It said if the defendant is detained for longer than the law allows in that context, the remedy is either release or the initiation of civil commitment proceedings. Disposing of the charges is an altogether separate question. It requires an independent legal justification. The defendant has not raised here any other alternative ground, and the statute itself simply does not provide the remedy the defendant is seeking. And even if it had, frankly, the district court acted well within its discretion in finding that under the circumstances of this case, that dismissal with prejudice simply was too harsh of a sanction. Unless Your Honors have any further questions, the government asks this court to affirm. Thank you very much. The case is taken under advisement.